The judgment of the court was pronounced by
Preston, J.
The plaintiff has enjoined an execution issued against him from the District Court of the parish of Concordia, for costs in the suit of Copley v. Routh. He alleges that some of the items of costs charged are not due; that other items are overcharged; that some are prescribed ; and pleads partial payments. He moreover claims from Edwards, one of the defendants in the injunction, as clerk of the parish of Concordia, five thousand dollars damages for his failure and neglect to make out and furnish the transcript of the record in the case of Copley v. Routh, in consequence of which an appeal regularly taken by him to the Supreme Court in that case was dismissed, and he suffered that amount of damages.
The defendants excepted, and plead that the District Court of the parish of Concordia was the only one which had jurisdiction of the matters and things set forth in the plaintiff’s petition. The execution was issued to the sheriff of the parish of Ouachito to be executed here, and therefore might be enjoined in this parish, as decided in the case of Lawes et al. v. Chinn, 4 N. S. 388. The plea to the jurisdiction of the court was properly overruled; and the defendants answered to the merits of the suit by filing a general denial.
On the day the cause was tried, the defendant, Thomas Edwards, prayed the court to strike out so much of the plaintiff’s petition as contains the allegations relative to the suit of George W. Copley v. John Routh, and on which the said Copley bases his claim in compensation and reconvention for five thousand dollars, the same being a claim for unliquidated damages in a matter not connected with the bill of costs included in the execution enjoined by the plaintiff, and cannot be set up in this court, nor in any injunction suit which the plaintiff is legally entitled to against the execution enjoined in this case ; and his motion was sustained.
Neither this motion nor the plea to the jurisdiction which was overruled contained a formal plea by Edwards, that his domicil was in the parish of Concordia, and that he could be sued for the damages only at the place of his domicil, and we are not, therefore, required to decide the question which that ¡dea would have presented.
At the late term of this court at Opelousas, we held, that execution on a judgment could not be enjoined on an unliquidated claim for damages. But the objection was specially and seasonably made, and the judgment too was for a precise amount. Here, no exception was filed, but issue was joined on the merits of the claim for damages, and the plaintiff was prepared for trial with all his evidence. The execution too was issued on a fee bill, the amount of which was not settled by judgment, and some of the items of which, as for copies of documents from the register of the land office of a township map from the office of the Surveyor General of the United States, the expense of taking depositions, &c. were not even precisely fixed by law.
*649 The district court, having rejected the plaintiff’s claim for damages, refused to receive his evidence in support of the claim. But the whole evidence in support of the claim comes up with the record. If it was sufficient to support the plaintiff’s claim for damages, we might remand the cause to enable the defendant to rebut it by his evidence. But after a careful examination of the evidence, we are of opinion it does not justify a judgment for damages, and that it is our duty to terminate this litigation.
The whole record of the suit of Copley v. Routh is before us, in which judgment was rendered in favor of the defendant for the land for which the suit was brought. The plaintiff contends, that if he could have had a trial before the Supreme Court on the merits, the judgment would have been reversed, and he would have recovered the land. If so, the question would arise whether the dismissal of the appeal was owing to the failure and neglect of the clerk to furnish the transcript of the record in due time to have the case tried on its merits.
We think the judgment of the district court could not have been reversed if the Supreme Court had tried the case on its merits.
In 1841, Copley brought suit for the land by virtue of a receipt from the receiver of public monies for the land district north of Red River, dated the 18th of January, 1841. The Government of the United States, by an act of Congress approved the 27th of February, 1830, had confirmed the land to the heirs and legal representatives of Lewis Clarke. Vol. 8 Laws of the United States, chap. 225, p. 249. The approved township map and other documents from the land office leave no doubt that it was immediately surveyed, located and accepted by the confirmees. On the 31st of August, 1831, Elijah L. Clarke sold the exact quantity, 365 30-100 of an acre contained in sections 12 and 13, surveyed for the claim, and through mesne conveyances it was acquired by the defendant, Routh, on the 11th of October, 1832, who possessed it ever since. Indeed, it was settled by Lewis Clarke in 1803, who claimed its confirmation before the register of the land office in 1820, under acts of Congress for the adjustment of land titles in Louisiana, and was therefore never subject to public sale or private entry. The section No. 12 was, therefore, clearly entered in error by Copley, in 1841.
The plaintiff relied chiefly on defects in the proof of the chain or transmission of the title from the legal representatives of Lewis Clarke down to Routh. As he held under the United States, the chain of title was immaterial to him, as the United States had parted with all title before the en'oneous sale to him.
Routh, and those under whom he claimed title, had been in possession probably ten years before the commencement of plaintiff’s suit in June, 1841. For a letter of the register of the land office, dated the 7th of January, 1831, represents Elijah L. Clarke as entitled to the land if he chose to take it; and that he took it is proved by the fact that he sold it on the 31st of August, 1831. The jury might well, therefore, have presumed the prescription of ten years against the plaintiff, even if he had claimed under the heirs of Lewis Clarke. See the case of Goddard’s Heirs v. Urquhart.
The costs of the suit are not prescribed; because, by judgment signed the 4th of June, 1845, they were ordered to be taxed and paid by the plaintiff, and in consequence of his appeal, the judgment did not become final until February, 1848. The 12th section of an act approved the 26th of March 1842, requiring the oath of the clerk, and approval of the judge, before execution against the *650 plaintiff for costs, applies only to their collection if demanded every six months before the termination of the suit, and not to their collection by fieri facias under the final judgment in the case.
The charge of the clerk for the transcript of the record for the appeal of $33, appears to be high, and the testimony of Messrs. Slociclon and Steele, renders it probable there was an overcharge. The copying of twenty-one thousand words, the number which it is probable the record contained, entitled the clerk to but $21. The certificate and seal to the record, the citations of appeal to the appellees, the appeal bond and other services, could not have exceeded five or six dollars, leaving five or six for which we cannot account. But the plaintiff should have required an explicit fee bill, and made the overcharge manifest. We do not know, certainly, that the district court erred in not allowing any part of this item as an offset to the execution.
We should have thought that the charges for writs of venire facias at every term of the court should not have been allowed, but only the fee for one writ. But the Legislature by providing, in 1845, that a charge for but one writ of venire facias should be made in each case, seems to have recognized the previous practice of charging for them at every term of the court.
The charge of $1 50 for searches under the law of 1844, is probably erroneously stated, as we have been unable to find any law in 1844 on the subject. It must have been for searches until 1844,' under the fee bill before the act of 1845. The objection to the charge is not pressed in plaintiff’s brief. The evidence does not show that Edwards should be charged with the $15 for the fee bills placed in his hands by the plaintiff for collection, and subsequently returned.
We have not examined the claims of other persons embraced in the execution, because they are all under the sum of $300, and the appellant could not, even by their consent, bring them before this court by a claim against Edwards alone for damages, for a sum giving this court jurisdiction.
The judgment of the district court is therefore affirmed, with costs.